JOEL BARCELONA,

      Plaintiff,

v.

JULIE L. JONES, et al.,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Raymond Herr, MD, Julie L. Jones, and D.L. Stine's (collectively, the "Defendants") Motion for Summary Judgment (the "Motion").[1] The Motion is fully briefed and ripe for review.

Plaintiff Joel Barcelona brought this *pro se* case pursuant to 42 U.S.C. § 1983 after he was denied a hearing aid by prison officials in 2014. *See* Am. Compl., DE 36. Plaintiff's Amended Complaint alleges that the Defendants violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment through Defendants' deliberate indifference to his serious medical need for a hearing aid. *See id.*

In considering this Motion, the Court has reviewed the following briefing: Defendants filed a Statement of Facts in support of their Motion ("SOF"). DE 146. Plaintiff responded to the Motion. Pl. Resp., DE 153. With his Response, Plaintiff also filed exhibits, including his medical

---

[1] This case was previously referred to Magistrate Judge Reid for a Report and Recommendation on all dispositive matters. *See* DE 2; DE 102. The Court vacates that referral for the limited purpose of considering the Motion for Summary Judgment, consistent with the Court's dialogue with the parties at the Calendar Call held before the undersigned on August 14, 2019. *See* DE 149.

records, grievances, and relevant Department of Corrections policies. *See* DE 153-1, 153-2. However, Plaintiff did not respond to Defendants' SOF, in violation of Federal Rule of Civil Procedure 56(c) and Local Rule 56.1, despite being apprised of Rule 56's requirements in Judge Reid's Order Instructing Pro Se Plaintiff to Respond, which quoted the language of Rule 56(e). DE 115. Defendants filed a Reply in support of their Motion. *See* Reply, DE 154.

In light of Plaintiff's *pro se* status and failure to file a responsive SOF, the Court has carefully reviewed all of the attachments to Plaintiff's Response at DE 153, pursuant to Federal Rule of Civil Procedure 56(e). The Court has also reviewed Plaintiff's filings that were submitted in briefing the first Motion for Summary Judgment in this case, because Plaintiff's Response to the instant Motion references the documents he submitted with his prior Response.[2] *See* Pl. Resp., DE 153; *see also* Pl. 1st Resp., DE 120. Almost all of Plaintiff's filed evidence has also been submitted by Defendants and is cited to in Defendants' SOF. *See* DE 112; Def. SOF, DE 146. The parties' understanding of the facts and the relevant medical records are substantially consistent, as evidenced by their production, during the course of briefing two summary judgment motions, of the same records. The exception is Plaintiff's sworn affidavit which was filed in response to the first summary judgment motion at DE 120 and Plaintiff's deposition testimony. *See* DE 120, DE 24; Pl. Dep., DE 144-1. While Plaintiff's arguments in his responses are not evidence, his sworn affidavit and his deposition testimony are. *See Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (finding a plaintiff's sworn affidavit "should have been treated as testimony by the district court").

---

[2] This is the second Motion for Summary Judgment briefed in this case. The first Motion resulted in a Report and Recommendations issued by Magistrate Judge Reid, which was ultimately vacated to allow for additional discovery and rebriefing of the motion for summary judgment. *See* Mot., DE 114; Report, DE 125; Order Vacating, DE 131; Order allowing discovery and rebriefing, DE 133.

Finally, the Court held a pretrial Calendar Call with defense counsel and Plaintiff Barcelona physically present in the courtroom on August 14, 2019. DE 149.

## I. FACTS

Plaintiff has been in the custody of the Florida Department of Corrections ("FDOC") since March 21, 2005. Def. SOF., DE 146 ¶ 1. Plaintiff suffers from asymmetrical hearing loss, and he brought this case against various prison officials after he was denied a hearing aid in 2014. *See* Am. Compl., DE 35; *see also* 6/6/14 Letter, DE 112-1, 11 (identifying Plaintiff's hearing impairment).

On June 6, 2014, Plaintiff was seen by Dr. Arthur G. Zinaman, an audiologist with his doctorate in audiology and who has been in practice since 1988. Def. SOF, DE 146 ¶ 3; *see also* 6/6/14 Report, DE 112-1, 11; Zinaman Dep., DE 139, 24. Dr. Zinaman reported that Plaintiff had "profound" hearing loss in the right ear and "mild" hearing loss in the left ear. *See* 6/6/14 Report, DE 112-1, 11. Based on this diagnosis, Dr. Zinaman reported that "[a]mplification is not specifically recommended on the right side due to the severity of the hearing loss and poor word discrimination exhibited. However, the left ear is a candidate for a hearing aid to improve overall hearing due to the lack of such in the right ear." *Id.*, *see also* Def. SOF, DE 146 ¶ 3. Accordingly, "[u]pon medical clearance and (South Bay Correctional) facility authorization, a hearing aid for the left ear would be beneficial." *Id.*; *see also* Def. SOF ¶ 3. Dr. Zinaman also recommended an MRI to better understand the source of Plaintiff's right ear hearing loss. *See id.* The MRI was completed at Lakeside Medical Center, and the reviewing physician concluded that the results were "unremarkable." MRI Report, DE 112-1, 22.

Plaintiff in his affidavit swears that "Dr. J. Heller ordered that Plaintiff transport [sic] to Lakeside M.C. to get a mold for a hearing aid by Dr. Zinaman. The hearing aid was ordered." Pl.

Aff., DE 120, 24. Plaintiff repeats in his November grievance that an unnamed doctor at Palm West Hospital ordered a hearing aid mold to be made for Plaintiff and that he was transported outside of the prison for the same. Nov. Grievance, DE 112-2, 7 ("On July 11, 2014, I was taken to Palm West Hospital to get an MRI. The doctor there ordered that I be scheduled to get a mold for a 'hearing aid.' On August 5, 2014, I was taken to Lakeside Hospital to get a mold for a hearing aid."). *See also* Pl. Dep., DE 144-1, 9, 11. Defendants do not address whether Plaintiff was transported for a hearing aid mold, and none of the submitted medical records from either party supports Plaintiff's assertion that a mold was ordered. *See* Def. SOF, DE 146; DE 153; DE 112.

On August 12, 2014, Dr. Zinaman issued a second report. *See* 8/12/14 Report, DE 112-1, 26. The Report states that a "mild gain device for the left ear may be beneficial, but this is declined by patient. Alternatively, a power instrument for the right ear may provide speech and environmental awareness with possible transcranial effect. Mr. Barcelona is agreeable to this plan." *Id.*; *see also* Def. SOF., DE 146 ¶ 5. At his deposition, Plaintiff did not recall being offered a device for his left ear. Pl. Dep., DE 144, 11 ("Q: Did [Dr. Zinaman] offer you a device for your left ear? A: No. Q: Was there any discussion regarding your left ear? A: No.").[3]

On August 18, 2014, there is a notation in Plaintiff's Chronological Record of Health Care (the "Health Record"), by Dr. J. Heller (South Bay's Medical Director), which appears to indicate "Await [illegible] status of hearing aid approval." 8/18/14 Health Record Note, DE 112-1, 25. By August 22, 2014, the Health Record indicates that "Audiology referral deferred by UM [Utilization Management]. Due to adequate hearing in one ear, not a candidate for hearing aid." *Id. See also* Def. SOF, DE 146 ¶ 6. The same was indicated in October 2014. *See* 10/2/14 Health Record Note,

---

[3] In addition, in his unsworn responses, Plaintiff contests whether he was seen a second time by Dr. Zinaman after his MRI was completed. See Pl. Resp., DE 153, 3. *See also* Zinaman Dep., DE 139, 27. Plaintiff further denies that he ever declined the left ear gain device suggested by Dr. Zinaman. See Pl. Resp., DE 154, 9.

DE 112-1, 29 ("UM denied based on [Health Services Bulletin] 15.03.27. Must have bilateral hearing loss.").

Health Services Bulletin No. 15.03.27 was issued on April 9, 2014 for the purpose of establishing "uniform procedures for the provision of auditory care to inmates." Bulletin, DE 112-3, 1-3. The Bulletin specifies that "A recipient [of a hearing aid] who has a unilateral (one ear) hearing loss is not eligible for services. Exceptions to this policy may be granted on a case-by-case basis as recommended by an otolaryngologist or otologist, with approval of the regional medical director." *Id. See also* Def. SOF, DE 146 ¶ 8.

On August 22, 2014, "Dr. Herr, the Chief Medical Officer for Correction Healthcare Companies in Utilization Management, reviewed the request for hearing aid along with the June 2, 2014 audiometry results." Def. SOF, DE 146 ¶ 6. According to Dr. Herr, "[b]ased on the audiometry results and the adequacy of the hearing level in Mr. Barcelona's left ear, he did not meet the medical criteria guidelines for bilateral hearing loss under [Health Services Bulletin] 15.03.27(G)(2)(a)-(b) and therefore Mr. Barcelona was not a candidate for a hearing aid. Additionally, based upon the audiometry results for the right ear, and the profound hearing loss, it was not medically probable that a power instrument device for the right ear could have remedied Mr. Barcelona's condition. Based on the foregoing, I deferred further audiology consultation and did not authorize a hearing aid for Mr. Barcelona at that time." Herr Aff., DE 145-1 ¶ 15; *see also* Def. SOF ¶¶ 11-14.

Plaintiff formally grieved this determination on September 24, 2014; October 21, 2014; November 16, 2014; and December 8, 2014. DE 112-2. In his September grievance, Plaintiff claims that his "condition could have easily been treated with a hearing aid. A hearing aid was ordered by not one but two separate doctors." *Id.* at 1-2. In response to Plaintiff's September

grievance, Dr. Heller and Warden Stine signed a response stating, "Records indicate you only have hearing loss in your right ear, per policies and procedures, in order to be eligible for services, the recipient must have a bilateral (both ears) hearing loss. A referral was submitted but denied because you do not meet this criteria." *Id.* at 3. Plaintiff's October, November, and December grievances repeated the arguments he raised in his September grievance. *See id.* at 4-6, 7-8, 10-12. In response to the November grievance, Dr. Heller and a different warden signed a response stating:

> Records indicate you were seen by audiologist on 8/12/14 and it was determined your hearing loss in the right ear. [sic] A referral request for hearing aid was ordered on 8/19/14. The referral was submitted to the Utilization Department for a decision and the consult was deferred by utilization management. Per Florida Department of Corrections Guidelines a recipient for hearing aids must have a bilateral (both ears) hearing loss. A person who has unilateral (one ear) hearing loss is not eligible for services. Based on the above information, your grievance is denied.

*Id.* at 9.

Plaintiff then initiated this § 1983 action in January of 2015. Compl., DE 1.

In November 2018, while this action was still pending, Plaintiff was fitted for a hearing aid for his left ear by Ariana Wascher, a licensed hearing aid specialist. Def. SOF, DE 146 ¶ 42, 46. Although his hearing in both ears had remained stable in the intervening years, the Health Services Guidelines had changed as of November 1, 2018, so that Plaintiff qualified for a left ear hearing aid. *See id.* ¶¶ 47-51. *See also* Wascher Dep., DE 139, 8 (characterizing both ears' hearing loss as "stable" between 2014 and 2018 tests in spite of "very slight" or "slight" changes in the left ear). *Contra* Pl. Dep., DE 144, 14 ("Q: Was your hearing different in 2018 when you saw Dr. Arian? A: Yes, it's different. . . . I had a hard time hearing about it. Q: It had gotten worse over the last four years? A: Yes, yes, That's why I said it's almost damaged, so— Q: Is it worse than it was in 2016 when you were transferred? A: Yes.").

In her deposition, Ms. Wascher stated that Plaintiff's hearing in the left ear improved with the hearing aid. *See id.* at 14 ("[U]pon fitting it and testing it and programming it I determined that it was a good fit for his ear and that he was hearing speech crisp and clear, hearing better."). However, even with his hearing aid, Plaintiff states that as of August of 2019, he "cannot hear T.V., loud speaker, mail calls, meal calls, or [if] somebody is calling behind me where the voice came from." Pl. Resp., DE 153, 13. He states that the left ear hearing aid "is only for face to face, close and quite [sic] room." *Id.*

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56, the summary judgment movant must demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Grayson v. Warden, Comm'r, Ala. Dep't of Corr.*, 869 F.3d 1204, 1220 (11th Cir. 2017) (quoting Celotex, 477 U.S. at 322)..The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48).  A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). However, once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (citing *Celotex*, 477 U.S. at 322). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.    PLAINTIFF'S EIGHTH AMENDMENT CLAIM

"The Eighth Amendment's prohibition against cruel and unusual punishment, applicable to the State of Florida through the Due Process Clause of the Fourteenth Amendment, prohibits the 'unnecessary and wanton infliction of pain.'" *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010) (citing *Robinson v. California*, 370 U.S. 660 (1962); quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In the prison context, the "Eighth Amendment can give rise to claims challenging the specific conditions of confinement, excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Id.* at 1303-04.

"To prevail on a claim of deliberate indifference to [a] serious medical need in violation of the Fourteenth Amendment, a plaintiff must show: '(1) a serious medical need; (2) the defendant['s] deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009)).

> This analysis contains both an objective and a subjective component. A plaintiff must first show an objectively serious medical need that, if unattended, posed a substantial risk of serious harm, and that the official's response to that need was objectively insufficient. Second, the plaintiff must establish that the official acted with deliberate indifference, i.e., the official subjectively knew of and disregarded the risk of serious harm, and acted with more than mere negligence.

*Gilmore v. Hodges*, 738 F.3d 266, 274 (11th Cir. 2013) (citing *Thomas*, 614 F.3d at 1304 (11th Cir. 2010); *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir.2000)).

A. <u>Serious Medical Need</u>

"A serious medical need is 'one that has been diagnosed by a physician as *mandating* treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (emphasis added) (citations omitted). "Medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hernandez v. Sec'y Fla. Dep't of Corr.*, 611 F. App'x 582, 584 (11th Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 108 (1976)). "[N]either a difference in medical opinion between the inmate and the care provider, nor the exercise of medical judgment by the care provider, constitutes deliberate indifference." *Id.*

In *Gilmore v. Hodges*, the Eleventh Circuit considered for the first time "whether a substantial hearing impairment that can be remedied by a hearing aid may amount to a serious medical need for purposes of the Eighth or Fourteenth Amendments." 738 F.3d 266, 273 (11th

Cir. 2013). Prior to *Gilmore*, there was "precious little case law addressing an official's failure to supply a severely hearing impaired inmate with hearing aids." *Id.* at 275. The *Gilmore* court concluded that "[S]ubstantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need." *Id.* at 276. The court emphasized two elements for a deliberate indifference claim based on an official's failure to provide hearing aids: First, the prisoner must suffer from *significant*, *substantial* or *severe* hearing loss and (2) the hearing loss must be able to be *remedied* by a hearing aid. *Id.* at 274 ("whether severe, treatable hearing loss amounts to an objectively serious medical need"); 276 ("Substantial hearing loss that can be remedied"); 277 ("not all hearing loss that amounts to a serious medical condition can be *remedied*"). Importantly, the *Gilmore* court "caution[ed] … that not all hearing loss amounts to a serious medical condition." *Id.* at 276. And, "not all hearing loss that amounts to a serious medical condition can be *remedied* with a hearing aid, and thus an official could hardly be faulted for failing to provide an inmate with a hearing aid in that circumstance." *Id.* at 277.

Here, the record makes clear that Plaintiff suffers from severe hearing loss in his right ear. Every medical professional who has examined Plaintiff determined that Plaintiff's right ear had "profound" hearing loss, the most extreme classification of hearing loss. *See, e.g.*, 6/6/14 Report, DE 112-1, 11; 6/25/14 Health Record, DE 112-1, 16; 11/26/18 Consultation Report, DE 144-3. *See also* Zinaman Dep., DE 139, 25 ("The profession recognizes different levels of hearing loss going from normal, mild, moderate, severe and profound. Profound is the worst hearing loss scenario."). Plaintiff does not refute this evidence. *See* Pl. Dep., DE 144-12 ("I lost my hearing in my right ear in 2014."). However, it is not clear from the record that a hearing aid, or any other device, could have remedied Plaintiff's *right* ear hearing loss. In June of 2014, Dr. Zinaman reported that "[A]mplification is *not* specifically recommended on the right side due to the severity

of the hearing loss and poor word discrimination exhibited." 6/6/14 Report, DE 112-1, 11 (emphasis added). In August of 2014, Dr. Zinaman stated that "a power instrument for the right ear *may* provide speech and environmental awareness with possible transcranial effect." *See* 8/12/14 Report, DE 112-1, 26. Dr. Zinaman made this recommendation *after*, he understood[4] Plaintiff to have declined a hearing aid for his *left* ear. *See* 8/12/14 Report, DE 112-1, 26. In his sworn affidavit, Dr. Herr stated that "based upon the audiometry results for the right ear, and the profound hearing loss, it was not medically probable that a power instrument device for the right ear could have remedied Mr. Barcelona's condition." Herr Aff., DE 145-1 ¶ 15. Plaintiff has not refuted Dr. Herr's medical opinion.

As to Plaintiff's left ear hearing loss, the record is undisputed that Plaintiff's hearing loss was "mild." *See* 6/6/14 Report, DE 112-1, 11 ("mild in left ear"); s*ee also* Pl. Dep., DE 144, 13 ("Q: Have you ever had a complete hearing loss in both ears? A: No."). This remained true in 2018. *See* Wascher Dep., DE 139, 7-8. Based on the undisputed record evidence from Plaintiff's medical providers, Plaintiff's left ear hearing loss fails the test articulated in *Gilmore* because his left ear hearing loss was only mild, which by definition, is not severe, substantial, or significant.

Nevertheless, when considering Plaintiff's overall hearing capacity, the Court's analysis of the plaintiff's hearing loss under the *Gilbert* framework changes. With regard to the magnitude of his hearing loss, the medical records and Plaintiff's subjective experiences are consistent with a finding of substantial hearing loss. *See, e.g.*, Pl. Dep., DE 144-1, 7. *See also* Pl. Resp., DE 153, 13 ("I cannot hear T.V., loud speaker, mail calls, meal calls, or somebody is calling behind me where

---

[4] In his Response, which is not a sworn statement, Plaintiff disputes that he declined the left ear hearing aid. Pl. Resp., DE 153, 20. In his sworn deposition testimony, Plaintiff could not remember whether Dr. Zinaman made the recommendation for a mild gain device for his left ear. Pl. Dep., DE 144-1, 11. Even if Plaintiff did not decline the left ear hearing aid in August of 2014, this dispute is immaterial to the Court's conclusion that the Defendants did not act with deliberate indifference. *See infra* Section III.B.

the voice came from."); Am. Compl., DE 36, 5 (same). Plaintiff identifies verbatim the kind of hearing difficulties that the *Gilmore* court recognized as potentially leading to serious harm to physical and mental health. *Cf. Gilmore*, 738 F.3d at 275-76 (describing that the plaintiff was unable to hear the TV and "could have had trouble hearing a fire or other alarm, responding to commands issued by guards, and reacting to a fight behind him or to prisoners threatening his safety."). The Court finds that due to the total loss of hearing in his right ear, coupled with even mild hearing loss in his left ear, a reasonable jury could conclude that Plaintiff has severe, substantial, or significant hearing loss.

However, it is less clear whether or not Plaintiff's overall hearing loss could be remedied by hearing aids. In 2014, Dr. Zinaman *suggested* various devices that *might* be able to help him. *See* 6/6/14 Report, DE 112-1, 11 ("[T]he left ear is a candidate for a hearing aid to improve overall hearing due to the lack of such in the right ear."); 8/12/14 Report, DE 112-1, 26 ("A mild gain device for the left ear *may* be beneficial, but this is declined by the patient. Alternatively, a power instrument for the right ear *may* provide speech and environmental awareness.") (emphasis added). *See also* Herr Aff., DE 145-1 ¶ 15 ("Additionally, based upon the audiometry results for the right ear, and the profound hearing loss, it was not medically probable that a power instrument device for the right ear could have remedied Mr. Barcelona's condition.").[5] Considering this evidence in the light most favorable to Plaintiff, the Court finds that there is a genuine issue of fact regarding whether any kind of hearing assistance device could have remedied his substantial hearing loss in

---

[5] The Court notes that although Plaintiff's claim must be analyzed based on the facts known at the time he was denied a hearing aid in 2014, Plaintiff struggled with the same hearing problems in 2018 after he had been given a hearing aid for his left ear as he had before he received his left ear hearing aid. *See* Pl. Resp., DE 153 ("The hearing aid on my left ear is only for face to face, close and quite [sic] room. At present, I cannot hear T.V., loud speaker, mail calls, meal calls, or somebody is calling behind me where the voice came from.").

2014. Based on the doctors' *suggestions* of a hearing aid or power instrument, a reasonable jury *could* conclude that Plaintiff's hearing loss could be remedied with one of these devices.

B. <u>Deliberate Indifference</u>

"To establish deliberate indifference, [a plaintiff] must prove (1) subjective knowledge of a risk of serious harm; and (2) disregard of that risk (3) by conduct that is more than mere negligence." *Nam Dang by & through Vina Dang v. Sheriff, Seminole Cty. Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "Deliberate indifference must be more than an inadvertent failure to provide adequate medical care, negligence in diagnosis or treatment, or medical malpractice." *Sifford v. Ford*, 701 F. App'x 794, 795 (11th Cir. 2017). "[A] 'simple difference in medical opinion' does not constitute deliberate indifference." *Ciccone v. Sapp*, 238 F. App'x 487, 489 (11th Cir. 2007) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)). "[N]either a difference in medical opinion between the inmate and the care provider, nor the exercise of medical judgment by the care provider, constitutes deliberate indifference." *Hernandez v. Sec'y Fla. Dep't of Corr.*, 611 F. App'x 582, 584 (11th Cir. 2015). *See also West v. Higgins*, 346 F. App'x 423, 427 (11th Cir. 2009) ("[Plaintiff's] claims rest on a difference of opinion regarding the care that he needed and received, and the evidence does not establish deliberate indifference to a serious medical need."). Importantly, "[m]edical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Thus, "[w]hether governmental actors should have employed 'additional diagnostic techniques or forms of treatment' is a 'classic example of a matter for medical judgment' and, therefore, is not an appropriate basis for liability under the Eighth

Amendment." *Sifford*, 701 F. App'x at 796 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). *See also Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (1st Cir. 1981) ("Where a prisoner has received ... medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in tort law.")).

Here, Plaintiff has sued three prison officials: Dr. Raymond Herr, the Utilization Management director who denied Plaintiff's request for a hearing aid; D.L. Stine, the prison warden; and Julie Jones, the Secretary of the Florida Department of Corrections. *See* Am. Compl., DE 36; *see also* Order, DE 141 ("Therefore, the operative Amended Complaint is amended by interlineation to identify Dr. Raymond Herr, as the individual in Utilization Management who denied authorization for the Plaintiff's hearing aid.").

### 1. *Dr. Herr*

As the Chief Medical Officer for Corrections Healthcare Companies in Utilization Management, Dr. Herr "reviewed the request for hearing aid" with Plaintiff's 2014 audiometry results. Def. SOF, DE 146 ¶ 6. Throughout this litigation, Plaintiff has maintained that a "non medical officer" denied his request for a hearing aid. *See, e.g.*, Am. Compl., DE 36. And, the Court and the parties struggled to identify exactly who that individual was. *See, e.g.*, DE 47, DE 48, DE 76, DE 77, DE 109, DE 117. However, after many inquiries, defense counsel identified the individual as Dr. Raymond Herr, M.D., CCHP. Notice, DE 140. As a result, Plaintiff's Amended Complaint was amended by interlineation to include Dr. Herr. Order, DE 141. Plaintiff did not object to this procedure.

Once Dr. Herr was identified as the individual official who denied Plaintiff's hearing aid request, Dr. Herr provided an affidavit regarding that decision. "Based on the audiometry results

and the adequacy of the hearing levels in Barcelona's left ear, he did not meet the *medical* criteria guidelines for bilateral hearing loss… and therefore Barcelona was not a candidate for a hearing aid. *It was not medically probable* that a power instrument for the right ear could have remedied Barcelona's condition." Def. SOF, DE 146, ¶ 11 (emphasis added); *see also* Herr Aff., DE 145-1. Plaintiff has not refuted this evidence. In his Response, he continues to refer to his sworn affidavit at DE 120, which assumed, based on the information available to him at the time, that a "non-medical official" denied his hearing aid request. In his Response, Plaintiff repeats that he was told that Dr. Herr "refused to authorize payment for hearing aid because the plaintiff could hear from one ear." Resp., DE 153, 25. Indeed, Plaintiff appears plainly aware that the hearing aid request was denied because he had sufficient hearing in his left ear. *See* Pl. Aff., DE 120, 24. Plaintiff's insistence that Dr. Herr was deliberately indifferent to his need for a hearing aid amounts to a disagreement in Dr. Herr's medical judgment, which is not sufficient for a deliberate indifference claim. *Cf. Sifford*, 701 F. App'x at 796; *Waldrop*, 871 F.2d at 1033.

Here, it is not disputed that Dr. Herr denied Plaintiff's hearing aid request, and that he did so based on Plaintiff's ability to hear in his left ear and his medical opinion that "it was not medically probable that a power instrument device for the right ear could have remedied" Plaintiff's condition. *See* Herr Aff., DE 145-1, 4. This decision does not amount to deliberate indifference by Dr. Herr, nor was it "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Harris v. Thigpen*, 941 F.2d at 1505. And, Plaintiff's disagreement with Dr. Herr's medical judgment is insufficient to create a genuine issue of material fact as to whether Dr. Herr was deliberately indifferent to his medical condition. To the contrary, the record is clear that Dr. Herr concluded that, in his medical judgment, a hearing aid was not appropriate or necessary for Plaintiff. *See* Def. SOF, DE 146, ¶ 11-15; *see also* Herr Aff., DE 145-1.

Furthermore, to the extent Dr. Heller may have disagreed with Dr. Herr's denial of the hearing aid, *see* Def. SOF, DE 146 ¶ 17, such a disagreement *between doctors* does not provide evidence of deliberate indifference to a serious medical need. *See Whitehead v. Burnside*, 403 F. App'x 401, 403-404 (11th Cir. 2010) (affirming summary judgment in favor of prison officials where plaintiff's physician disagreed with prison medical staff regarding appropriate treatment: "[plaintiff] has established, at best, a difference of medical opinion as to the appropriate treatment for his injured knee. His personal belief regarding the severity of his injury is not sufficient to overcome the medical opinions of [prison medical officials]."); *see also Waldrop*, 871 F.2d at 1033.

Accordingly, Dr. Herr is entitled to summary judgment, because Defendants have shown that there is no genuine dispute of material fact that Dr. Herr denied Plaintiff's hearing aid request based on his medical judgment, which is insufficient to support Plaintiff's claim for deliberate indifference.

### 2. *Warden Stine and Secretary Jones*

Plaintiff has also sued Warden Stine and Secretary Jones for deliberate indifference to his serious medical need. Warden Stine was only involved in Plaintiff's medical treatment to the extent that he signed off on Dr. Heller's October 2014 response to Plaintiff's grievance. *See* Def. SOF, DE 146 ¶¶ 22-24; October Resp., DE 112-2, 3. Similarly, Secretary Jones was only involved in Plaintiff's treatment to the extent that her representative responded to Plaintiff's grievances. *See* Def. SOF, DE 146, ¶¶ 24-31. In this circumstance, where the Warden and Secretary are "not [] medical professional[s], nor [] directly involved in [plaintiff's] medical care," the plaintiff "must establish that [the defendants were] responsible for his constitutional deprivation in a supervisory capacity." *Sealey v. Pastrana*, 399 F. App'x 548, 552 (11th Cir. 2010)

"[S]upervisors can be held liable for subordinates' constitutional violations on the basis of supervisory liability under" Section 1983. *Mathews v. Crosby*, 480 F.3d 1265, 1270 (11th Cir. 2007). "Supervisory liability under § 1983 occurs 'when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation.'" *Id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir.2003)).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Id.*

Nonetheless, "supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care." *Williams v. Limestone Cty., Ala.*, 198 F. App'x 893, 897 (11th Cir. 2006) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)).

Here, there are no allegations of widespread abuse that would put Warden Stine or Secretary Jones on notice of the need to correct the deprivation of hearing aids, and the facts do not support an inference that they directed subordinates to act unlawfully. The record is clear that Plaintiff was denied a hearing aid based on Dr. Herr's medical judgment and on the Health Services bulletin in effect in 2014, which made Plaintiff ineligible for a hearing aid. Indeed, Plaintiff has not disputed that the only reason a hearing aid was not authorized was because of the policy – he repeats throughout his pleadings, responses, sworn affidavit, and deposition that he was denied a hearing aid because "one ear is good enough to hear" based on the Health Services bulletin. *See, e.g.*, Pl. Dep., DE 144, 12 ("Q: It wasn't that folks weren't going to buy you a hearing aid because

of some kind of discipline issue or some kind of retaliation? A: No. The only reason that they refused to pay for that is because what they are saying is one ear is enough to hear. That's what they are saying.").

As non-medical supervisors, both Warden Stine and Secretary Jones were entitled to rely on Dr. Herr's medical judgment. Accordingly, they are entitled to summary judgment, because Defendants have shown that there is no genuine dispute of material fact that they were not deliberately indifferent to Plaintiff's serious medical need.

## IV. DEFENDANTS' IMMUNITY

Alternatively, even if Defendants were deliberately indifferent to Plaintiff's serious medical need, the Court finds that all three Defendants are immune from suit.

### A. Official Capacity Claims

Defendants argue that to the extent Plaintiff attempted to sue the three defendants in their official capacities as prison officials, they are immune from suit pursuant to the Eleventh Amendment to the Constitution. *See* Def. Mot., DE 147, 21.

Plaintiff's Amended Complaint alleges that he is suing Defendants in their "official capacity." *See* Am. Compl., DE 36, 4, 14. Plaintiff seeks monetary damages for relief against these Defendants. *Id.* at 6.

The Eleventh Amendment absolutely bars suits for damages against state actors. *See, e.g.*, *Gamble v. Florida Dep't of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986). Here, there is no dispute that the Florida Department of Correction, and its employees, are state actors. Accordingly, Defendants are entitled to sovereign immunity for monetary damages that Plaintiff seeks from Defendants in their *official* capacity.

B.  Individual Capacity Claims

To the extent the Amended Complaint seeks monetary damages against Defendants in their *individual* capacities, "qualified immunity shields government officials from individual-capacity suits for actions taken while performing a discretionary function so long as their conduct does not violate a 'clearly established' constitutional right."  *Montanez v. Carvajal*, 889 F.3d 1202, 1207 (11th Cir. 2018).  This shield allows officials to carry out their discretionary duties without the fear of personal liability or harassing litigation.  *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018).  Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks omitted).  The applicability of qualified immunity presents a question of law for a court to decide.  *Sims v. Metro. Dade Cty.*, 972 F.2d 1230, 1234 (11th Cir. 1992).

To be entitled to qualified immunity, an officer must establish that he was acting within his discretionary authority during the incident.  *Manners*, 891 F.3d at 967.  The officer proves that he acted within his discretionary authority "by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority."  *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011) (quotation marks omitted).  Here, Plaintiff does not dispute that the Defendants were acting within their discretionary authority in declining to authorize a hearing aid.

If an officer establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the officer violated a constitutional right, *and* that the constitutional right was clearly established at the time of the alleged deprivation of the right. *Montanez*, 889 F.3d at 1207.

The Eleventh Circuit employs two methods for determining whether a reasonable officer would know that his conduct is unconstitutional. *Id.* at 1291. First, a right is clearly established if, under the relevant caselaw at the time of the violation, "a concrete factual context exists so as to make it obvious to a reasonable government actor that his actions violate federal law." *Id.* (quotation marks omitted). Relevant caselaw is limited to the case law Supreme Court of the United States, published case law by the Eleventh Circuit Court of Appeals, and the highest court of the state under which the claim arose. *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011). Alternatively, the Court may examine the officer's conduct to determine "whether that conduct lies so obviously at the very core of what the [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the officer, notwithstanding the lack of fact-specific case law." *Fils*, 647 F.3d at 1291 (quotation marks omitted). This second method, known as obvious clarity, is a narrow exception to the general rule that only caselaw and specific factual scenarios can clearly establish a constitutional violation. *Id.*; *see also Coffin*, 642 F.3d at 1015 (stating that obvious clarity cases are rare).

Clearly established law "should not be defined at a high level of generality" and "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quotation marks omitted). Although there need not be a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 551 (quotation marks omitted). While "general statements of the law are not inherently incapable of giving fair and clear warning to officers," the unlawfulness must be apparent in the light of pre-existing law. *Id.* at 552 (quotation marks omitted); *see also Vaughan v. Cox*, 343 F.3d 1323, 1332 (11th Cir. 2003) (stating that the "salient question . . . is whether the state of the law gave the defendants fair warning that their alleged conduct was unconstitutional")

(quotation marks omitted)). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009). The Eleventh Circuit "has often been reluctant to reject qualified immunity for deliberate indifference to medical need claims that 'are highly fact-specific.'" *Gilmore v. Hodges*, 738 F.3d 266, 280 (11th Cir. 2013).

In 2013, the Eleventh Circuit acknowledged that "there was precious little case law addressing an official's failure to supply a severely hearing impaired inmate with hearing aids." *Gilmore*, 738 F.3d at 275 (11th Cir. 2013) (citing three unpublished circuit opinions and one district court opinion). Other cases had addressed deprivations of dentures, eyeglasses, and prostheses, but "these cases stopped short of stating a general principle applicable to all medical devices, including hearing aids." *Id.* at 279. Accordingly, the Court determined that there was no clearly established law regarding the provision of hearing aid batteries where the plaintiff had clearly been prescribed a hearing aid for severe, bilateral hearing loss. *See id.* at 269-70.

Here, the Court has the benefit of the Eleventh Circuit's guidance in this case, in the form of the appellate review of the Court's initial dismissal of this case. In the Eleventh Circuit's order vacating the dismissal of Plaintiff's Complaint, the court observed:

> We deem the allegations in Barcelona's complaint as falling between the two sets of circumstances described in *Gilmore*—substantial hearing loss that can be remedied by a hearing aid, and hearing loss that does not prevent a prisoner from carrying on a conversation or hearing directions from correctional officers without a hearing aid – and *this court has not yet addressed whether a prisoner's loss of hearing in one ear, which leads a doctor to prescribe a hearing aid, is insufficient to constitute a serious medical need where the prisoner retains some level of hearing in his other ear.*

*Barcelona v. Sec'y, Fla. Dep't of Corr.*, 657 F. App'x 896, 898–99 (11th Cir. 2016) (emphasis added). The Eleventh Circuit opinion unambiguously recognized that its court *has not addressed* whether the *Gilmore* standard extends to asymmetrical hearing loss. As a result, this Court cannot

conclude that Plaintiff had a "clearly established" right to a hearing aid, when he suffered asymmetrical hearing loss with only mild hearing loss in one ear (as opposed to the plaintiff's severe, bilateral hearing loss as in *Gilmore*).

In addition, at the time of the Eleventh Circuit's opinion, the parties were under the erroneous impression that Plaintiff's hearing aid request had been denied by a non-medical officer, which the Eleventh Circuit assumed to be true at that stage of litigation. *See id.* at 898. However, the record is now clear that it was *not* a non-medical officer, but a *medical doctor*, Dr. Herr, who denied Plaintiff's request. *See discussion supra*, Section III.B.1. This fact is critical to assessing whether any of the defendants were on notice that their conduct was unconstitutional.

This Court concludes that even if the Eleventh Circuit had not *explicitly* stated in its opinion *in this case* that it had not addressed this question presented by this case, the Defendants here still were not on notice that their conduct was unconstitutional in 2014. *Gilmore* did not give the Defendants fair warning that their alleged conduct was unconstitutional, based on the facts of *this* case, where: (a) the prisoner has asymmetrical hearing loss, (b) an outside doctor *suggested* treatment options, (c) the prison-employed *medical doctor* did not ultimately agree with the outside doctor's treatment recommendation, and (d) the prison doctor's determination was based on the likelihood that such treatments would produce medically significant mitigation of the prisoner's hearing loss. This is a very different situation from the facts in *Gilmore*, where: (1) the prisoner had already been *prescribed* hearing aids, (2) the prisoner suffered from bilateral hearing loss, (3) the prisoner's doctor "noted that binaural amplification is *strongly* recommended," but (4) prison officials, who were not medical doctors, had failed to provide the prisoner with batteries for his hearing aids. *See Gilmore*, 738 F.3d at 269 (emphasis in opinion). *Contra* 6/6/14 Report, DE 112-11 ("Amplification is not specifically recommended…However, the left ear *is a candidate* for a

hearing aid…"); 8/12/14 Report, DE 112-1, 26 ("Amplification is an option…A mild gain device for the left ear *may* be beneficial.").

Put simply, the constitutional question of whether Plaintiff's asymmetrical hearing loss constituted a serious medical need was not beyond debate in 2014 when Plaintiff's hearing aid request was denied. Therefore, Defendants are entitled to qualified immunity from this suit and summary judgment must be entered in their favor.

## V.   CONCLUSIONS

The Court concludes that Defendants are entitled to summary judgment. The Court finds that as a matter of law, Defendants were not deliberately indifferent to Plaintiff's alleged serious medical need. Dr. Herr made a medical judgment about Plaintiff's suitability for, and the appropriateness of, a hearing aid, and determined that Plaintiff was not eligible for one. Medical judgments, even those that prisoners and other medical professionals disagree with, do not rise to the level of a constitutional violation. Warden Stine and Secretary Jones were then entitled to rely on the medical judgment of the doctors charged with the medical care of prisoners in their care.

Additionally, the Defendants are immune from this suit. The Defendants, in their official capacities, are absolutely immune from suits for damages under the Eleventh Amendment. The Defendants, in their individual capacities, are protected by qualified immunity because the alleged unconstitutionality of their conduct was not clearly established at the time of the events giving rise to this suit.

Accordingly it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment [DE 147] is hereby **GRANTED**.

2. The Clerk of the Court is directed to **CLOSE** this case.

3. All pending motions are hereby **DENIED AS MOOT**. All deadlines are **TERMINATED**. All hearings are **CANCELLED**.

4. Defendant is **ORDERED** to file and email to the Court (Rosenberg@flsd.uscourts.gov) a proposed Final Judgment Order within three business days of the rendition of this Order.

      **DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 10th day of

September, 2019.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record, Clerk of Court, and
Joel Barcelona
M50331
Martin Correctional Institution
Inmate Mail/Parcels
1150 SW Allapattah Road
Indiantown, FL 34956
PRO SE